IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JANICE CASSANDRA WRENN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-00059-JD |
| | ) | |
| SCOTT PRUITT, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court are a Motion to Dismiss filed by Defendants Office of the Attorney General, Scott Pruitt, Mike Hunter, Mykel Fry, Lory Dewey, the Oklahoma Medicaid Fraud Control Unit, Thomas Siems, Joel Nico Gomez, Travis Kirkpatrick, and Wendy Larsen [Doc. No. 6] and a Motion to Dismiss filed by Defendants Oklahoma Health Care Authority, Kevin Corbett, Nicole Nantois, Jeremiah Streck, Traylor Rains, Melinda Thomason, Lisa Gifford, and Carrie Evans [Doc. No. 8].[1] Plaintiff Janice Cassandra Wrenn, appearing pro se, has filed a response in opposition to each motion [Doc. Nos. 13 and 14] and the defendants have filed a combined reply [Doc. No. 16]. Plaintiff has also filed a Motion for Leave to File Amended Complaint [Doc. No. 15] seeking to add defendants and incorporate new attachments into her Complaint. For the

---

[1] The Complaint [Doc. No. 1] indicates that the individual defendants are sued in their official and individual capacities. Official capacity suits brought under § 1983 "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)).

reasons stated below, the Court grants Defendants' Motions to Dismiss, denies Plaintiff's Motion for Leave to Amend, and stays this action.

I. **Background**

In her Complaint, Ms. Wrenn[2] alleges that three state agencies—the Oklahoma Attorney General's Office, the Oklahoma Health Care Authority, and the Oklahoma Medicaid Fraud Control Unit—and several individual employees or representatives of these agencies, conspired to violate her constitutional rights. *See* Compl. [Doc. No. 1] at 16–17. Ms. Wrenn asserts that the Oklahoma Health Care Authority began an investigation into her behavioral health businesses based on complaints from "disgruntled employees" that "did not follow due process guidelines regarding Medicaid fraud." *Id*. at 19–20. Specifically, she complains that the investigators "never questioned or even contacted Plaintiff, never performed an audit on the businesses . . ., and never conducted an inspection of the premises for purposes of investigating the claims." *Id.* at 22.

Ms. Wrenn alleges her outpatient behavioral health contracts were terminated and she was charged with "several counts of Medicaid fraud." *Id.* at 19–20. She has included a slew of attachments with her Complaint, including some showing that the State of Oklahoma is pursuing criminal charges against her in the District Court of Oklahoma County, case number CF-2016-4884. *See* Compl., Exs. 2–11 (marked as Exs. B–F). The

---

[2] As a pro se litigant, Plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This relaxed standard does not, however, "relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id*.

defendants agree that there is an active state criminal case and the docket sheet for this case reflects that the proceeding is ongoing. [*See* Doc. No. 6 at 12; Doc. No. 6-1; Doc. No. 8 at 14].[3] Ms. Wrenn claims the criminal proceeding "has no legal basis and should never have been initiated." Compl. at 17.

Based on these allegations, Ms. Wrenn brings three claims against the defendants. In Count 1, she alleges that the defendants violated her Fifth and Fourteenth Amendment due process rights by failing to conduct an audit and investigation before charging her. *Id.* at 21–24. Her aim appears to be to halt the criminal prosecution, as within this section she specifically requests that the Court "reconsider all motions" filed in the criminal case and review the state court's finding of probable cause.[4] *Id.* at 23.

---

[3] The Court may consider matters outside the pleadings in deciding whether to dismiss on the grounds of abstention without converting the motion into one for summary judgment. *See Sierra Club v. Chesapeake Operating, LLC*, 248 F. Supp. 3d 1194, 1199 (W.D. Okla. 2017); *see also* Fed. R. Evid. 201 (explaining judicial notice by a court). Regardless, Ms. Wrenn's allegations show an active state criminal prosecution, making abstention under the analysis below proper.

[4] From her Complaint, it is not entirely clear whether Ms. Wrenn intends only to challenge the constitutionality of her criminal prosecution, or also seeks to challenge the administrative procedures under which her contracts where terminated. In their respective motions, the defendants characterize the claim as one seeking interference in the criminal prosecution. Ms. Wrenn does not challenge this characterization in her responses and instead argues that the prosecution was commenced in bad faith and that the defendants "disregarded the required procedure by failing to conduct an audit before bringing a charge against the Plaintiff." Pl.'s Resp. [Doc. No. 13] at 10–11; Pl.'s Resp. [Doc. No. 14] at 10–11. Thus, the Court interprets Ms. Wrenn's claim as one challenging the constitutionality of her criminal prosecution. However, to the extent Ms. Wrenn intended to raise a due process claim based on the procedures used to terminate her contracts, her allegations would fail to state a claim because, although she complains that an audit was not performed, she does not assert that she was denied "notice and opportunity for hearing appropriate to the nature of the case." *Winters v. Bd. of Cnty. Comm'rs*, 4 F.3d 848, 856 (10th Cir. 1993). Indeed, her many attachments appear to show otherwise. *See*

In Count 2, Ms. Wrenn purports to bring a claim of "Official Misconduct" under 42 U.S.C. §§ 1983 and 1985 and claims that the defendants "entered into a conspiracy against Plaintiff when they operated under color of state law to conduct an illegal investigation" and "violated Plaintiff's civil rights while attempting to blackmail Plaintiff for money under color of state law." *Id.* at 24–25. She further pleads that "she is innocent and was unlawfully included in the Criminal action." *Id.* at 25.

Last, in Count 3, she alleges a claim for "Misconduct" based on the Attorney General Office's entering into a deferred prosecution agreement with Ms. Wrenn's former co-defendant. *Id.* at 26–27. Ms. Wrenn prays for damages and an order declaring that all defendants violated her constitutional rights. *Id.* at 27.

The defendants seek dismissal of these claims, arguing, among other things, that the Court should abstain from hearing this matter pursuant to the *Younger*[5] abstention doctrine because there is a pending criminal prosecution against Ms. Wrenn that provides an adequate basis to hear her federal claims. In her responses, Ms. Wrenn argues that *Younger* abstention is not appropriate because the State initiated the criminal charges against her in bad faith.

---

Compl., Exs. 1, 4–5 (marked as Exs. A, D–E). Further, amongst the numerous defendants she has named, she has failed to "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims . . . ." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

[5] *Younger v. Harris*, 401 U.S. 37 (1971).

## II. Discussion

### A. The Court must abstain from intervening in the ongoing state proceeding.

#### 1) Applicable law

The *Younger* abstention doctrine recognizes that principles of equity, comity, and federalism motivate a "longstanding public policy against federal court interference with state court proceedings . . . ." *Younger*, 401 U.S. at 43–45. This restraint by federal courts yields "respect for state functions" and the independent operation of state legal systems. *Id.* at 44; *see also Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (explaining that the policies underlying *Younger* include "a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.") (citation omitted). Thus, "[e]ven when a federal court would otherwise have jurisdiction to hear a claim, the court may be obliged to abstain when a federal-court judgment on the claim would interfere with an ongoing state proceeding implicating important state interests." *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1227–28 (10th Cir. 2004) (explaining that the "classic example of this proposition . . . is a federal suit to enjoin a pending state criminal proceeding").

*Younger* abstention is, however, "the exception, not the rule," *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (citation omitted), and the Supreme Court has limited its application to three "exceptional" circumstances:

(1) ongoing state criminal prosecutions;

5

    (2)    certain civil enforcement proceedings; and

    (3)    "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (citation omitted).

When analyzing the *Younger* abstention doctrine, the Court may also consider additional factors, including whether:

    (1)    there is an ongoing state criminal, civil, or administrative proceeding;

    (2)    the state court provides an adequate forum to hear the claims raised in the federal complaint; and

    (3)    the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Amanatullah v. Colorado Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) (citing *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997)); *see also Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) ("*Phelps II*") (citing same three-part test for determining abstention under *Younger*). The Supreme Court cautioned federal courts, however, to limit the *Younger* abstention doctrine to the three circumstances identified in *Sprint Communications*, and that other factors cited in many post-*Younger* cases like *Amanatullah* are "additional factors" that are "not dispositive." *Sprint Comm'ns*, 571 U.S. at 81–82.

Finally, *Younger* abstention is "treated as jurisdictional" and it should be addressed at the outset of the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S.

6

83, 100 n.3 (1998); *see also Chapman v. Barcus*, 372 F. App'x 899, 901 n.1 (10th Cir. 2010) (unpublished) ("*Younger* abstention is 'fundamentally' and 'essentially a jurisdictional doctrine" and "'determine[s] when the federal courts must refrain from exercising jurisdiction'" (citation omitted)). The Court must "address it at the outset because a determination that [*Younger* abstention applies] moots any other challenge to the claim, including a different jurisdictional challenge." *D.L.*, 392 F.3d at 1229. If the conditions for abstention are met, "*Younger* abstention is non-discretionary" and "it must be invoked" unless there are other "extraordinary circumstances." *Amanatullah*, 187 F.3d at 1163.

### 2) Analysis

Applying *Younger*, *Sprint Communications*, and the additional factors in *Amanatullah*, the Court concludes that it must abstain from hearing Ms. Wrenn's federal claims because there is an ongoing state criminal proceeding. Here, Ms. Wrenn seeks a ruling that the defendants violated her constitutional rights in investigating and prosecuting claims of Medicaid fraud, which are the subject of her pending criminal case. She further pleads that she "is innocent" of the criminal charges and requests that this Court "reconsider" the motions filed in the criminal case, including the finding of probable cause. *See* Compl. at 23–25. Ms. Wrenn therefore seeks federal court interference with an ongoing state criminal proceeding, a situation that fits neatly within one of the "exceptional circumstances" identified by the Supreme Court as being appropriate for *Younger* abstention. *See Sprint Commc'ns, Inc.*, 571 U.S. at 72 (stating that "*Younger* exemplifies one class of cases in which federal-court abstention is

7

required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution"); *see also Goings v. Sumner Cnty. Dist. Att'ys. Off.*, 571 F. App'x 634, 638 (10th Cir. 2014) (unpublished) (*Younger* abstention appropriate where plaintiff sought to challenge prosecutorial procedures used during his ongoing criminal proceeding); *Wilson v. Morrissey*, 527 F. App'x 742, 744 (10th Cir. 2013) (unpublished) (*Younger* abstention appropriate where plaintiff sought to challenge the constitutionality of his ongoing criminal prosecution).

The additional factors set forth in *Amanatullah*—though not dispositive—also support abstaining in this case. First, the criminal proceeding is ongoing. Ms. Wrenn repeatedly refers to the criminal case in her pleadings and the defendants agree that the prosecution is ongoing. Second, the state court provides an adequate forum in which to hear Ms. Wrenn's federal claims. Generally, "abstention is appropriate unless state law clearly bars the interposition of the constitutional claims." *Moore v. Sims*, 442 U.S. 415, 425–26 (1979). Ms. Wrenn offers no reason to think that the Oklahoma state courts would not provide an adequate forum to challenge the constitutionality of her prosecution or to review the rulings made in her criminal case. *See Goings*, 571 F. App'x at 638 ("[I]t is beyond cavil that a state court *is* an adequate forum for the resolution of challenges to distinctly state prosecutorial or court procedures or processes . . . ."). And last, Oklahoma has an important interest in enforcing its criminal laws. *Winn v. Cook*, 945 F.3d 1253, 1258 (10th Cir. 2019).

Ms. Wrenn does not seriously dispute that any of these factors counsel in favor of abstention, but instead argues that she qualifies for an exception to the *Younger* doctrine.

Although *Younger* abstention is mandatory once the conditions have been met, a federal court may nevertheless enjoin a criminal prosecution if it "was (1) commenced in bad faith or to harass, (2) based on a flagrantly and patently unconstitutional statute, or (3) related to any other such extraordinary circumstance creating a threat of 'irreparable injury' both great and immediate." *Phelps v. Hamilton*, 59 F.3d 1058, 1063–64 (10th Cir. 1995) ("*Phelps I*") (citation omitted). These exceptions "provide for a very narrow gate for federal intervention." *Id.* at 1064 (citation omitted). Ms. Wrenn does not allege that there is an unconstitutional statute involved or that she faces an irreparable injury, but instead argues that "the State instituted the criminal charges against her in bad faith," "[t]hey are well aware that [she] is innocent of the charges," and the defendants "are part of some pattern of harassment against [her]." Pl.'s Resp. [Doc. No. 13] at 10; Pl.'s Resp. [Doc. No. 14] at 10.

The Tenth Circuit has identified three factors to consider in determining "whether a prosecution is commenced in bad faith or to harass: "(1) whether it was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions." *Phelps I*, 59 F.3d at 1065 (cleaned up). Notably, "it is the plaintiff's 'heavy burden' to overcome the bar of *Younger* abstention by setting forth more than mere allegations of bad faith or harassment." *Phelps II*, 122 F.3d at 889.

Ms. Wrenn does not allege that she has been subjected to multiple, unjustified prosecutions or that the prosecution was commenced in retaliation for her exercise of a constitutional right. Nor can she show that the prosecution was "undertaken with no reasonably objective hope of success" given that the state court made a finding of probable cause. *Phelps II*, 122 F.3d at 889; *see Phelps I*, 59 F.3d at 1064 n.12 ("Ordinarily, a bad faith prosecution will not be predicated upon probable cause."). Ms. Wrenn's mere conclusory allegations of bad faith, harassment, or "fraudulent activities" are not sufficient to carry her burden of showing that an exception to the *Younger* doctrine is warranted in this case. *See Wilson*, 527 F. App'x at 744 (finding that bad faith exception was not met where the plaintiff "offer[ed] nothing beyond his own assertions that these prosecutions were somehow wrongful").

In sum, the Court must abstain under *Younger* because Ms. Wrenn seeks federal court intervention in an ongoing state criminal prosecution.[6]

### B. A stay is appropriate.

The Court additionally finds that a stay is appropriate in this case. Generally, when *Younger* abstention applies, a court may dismiss the plaintiff's equitable claims but should stay the case if there are intertwined legal claims that cannot be asserted in state court. *See Deakins v. Monaghan*, 484 U.S. 193, 202 (1988) (holding that even if *Younger* abstention is appropriate "the District Court has no discretion to dismiss rather than to

---

[6] Once the Court has abstained, any additional inquiry into the case is improper. *Goings*, 571 F. App'x at 639. Adhering to this principle, the Court makes no rulings on any other arguments raised by the defendants' motions.

stay claims for monetary relief that cannot be redressed in the state proceeding"); *Myers v. Garff*, 876 F.2d 79, 81 (10th Cir. 1989) (affirming dismissal of equitable claims dismissed under *Younger* but reversing dismissal of damage claims that could not be heard in the state court).

In her Complaint, Ms. Wrenn seeks damages and an order declaring that the defendants violated her constitutional rights. Although the Eleventh Amendment "generally bars federal suits against state officers in their official capacities for money damages," *Franklin v. Kansas Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005) (unpublished), Ms. Wrenn has also sued the defendants in their individual capacities. Accordingly, the Court will stay this case until the state court criminal proceeding reaches a final conclusion (including all direct appeals). Additionally, because Ms. Wrenn's Motion for Leave to File Amended Complaint seeks only to add defendants and incorporate more exhibits, and does not seek to amend her allegations, the Court finds that it should be denied at this time, although Ms. Wrenn may resubmit her request following the removal of the stay.

### III.   Conclusion

**IT IS THEREFORE ORDERED** that the Motions to Dismiss filed on behalf of the defendants [Doc. Nos. 6 and 8] are GRANTED as explained in this Order. Plaintiff's Motion for Leave to File Amended Complaint [Doc. No. 15] is DENIED. This action is STAYED pending the final conclusion of Plaintiff's state court criminal proceeding, including all direct appeals. An appropriate Administrative Closing Order shall be entered. *Cf. Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962) (district courts have

inherent power to manage their dockets to achieve the orderly and expeditious disposition of cases).

**IT IS SO ORDERED** this 7th day of May 2021.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE